UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>DONALD CHILCOAT,<br><br>Defendant. | Criminal No.  22-cr-299 (CKK) |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
REPLY IN SUPPORT OF HIS MOTION FOR RELEASE FROM CUSTODY**

The United States, through undersigned counsel, files this response to defendant Donald Chilcoat's Reply in Support of his Motion For Release From Custody, ECF No. 84; *see also* ECF No. 81.

The defendant filed a motion for release from custody. ECF No. 81 (Donald Chilcoat). The United States responded. ECF Nos. 82, 90. The defendant filed a reply and, for the first time, argued that he "does not wish to set a speedy trial date in light of the pending Supreme Court Review in *United States v. Fischer*, 64 F.4d 329 (D.C. Cir. 2023), *cert granted*, No. 23-5572, 2023 WL 8605748 (Dec. 13, 2023)." ECF No. 84 at 4. The defendant also argued that, "if Mr. Chilcoat remains incarcerated pending trial, and *Fischer* is resolved in his favor, he will have served potentially more time on misdemeanor charges than the Court's sentence after a guilty plea on misdemeanor charges." *Id.* On that basis, the defendant requests that the Court grant his motion for release from custody. The Court should deny the defendant's request for the reasons articulated below.

1

**ARGUMENT**

First, that the Supreme Court granted certiorari in *Fischer* is not a sufficient basis to order the defendant's release. At this time, a panel of the D.C. Circuit and every district court judge but one has agreed with the government's interpretation of 18 U.S.C. § 1512(c)(2). *See Fischer*, 64 F.4th at 338 ("Although the opinions of those district judges are not binding on us, the near unanimity of the rulings is striking, as well as the thorough and persuasive reasoning in the decisions. . . . The district judge in the instant case stands alone in ruling that § 1512(c)(2) cannot reach the conduct of January 6 defendants."). The mere fact that the Supreme Court agreed to hear *Fischer* does not indicate that those opinions were wrongly decided. *See, e.g.*, *Heath v. Jones*, 941 F.2d 1126, 1131 (11th Cir. 1991) ("[T]he grant of certiorari does not necessarily indicate that the position advocated by Heath has any merit, only that it is an important question."). *Fischer* and other cases challenging the application of 18 U.S.C. § 1512(c)(2) have been pending for some time, and such developments did not previously merit an effective stay of proceedings, nor did they previously impact detention determinations. Nothing has changed by virtue of the Supreme Court's decision to grant *certiorari* in *Fischer*.

Second, the premise of the defendant's argument is that, if the Supreme Court issues an adverse ruling to the government's position, rendering § 1512(c)(2) inapplicable to the defendant's conduct, he cannot be sentenced to more time than he has currently served. That is incorrect.

As an initial matter, the defendant is charged with four additional counts: 18 U.S.C. § 1752(a)(1), 18 U.S.C. § 1752(a)(2), 40 U.S.C. § 5104(e)(2)(D), 40 U.S.C.§ 5104(e)(2)(G). The maximum term of imprisonment for each § 1752 charge is one year, *see* 18 U.S.C. § 1752(b)(2), and the maximum term of imprisonment for each § 5104 charge is six months, *see* 40 U.S.C. § 5109(b). The Court has discretion to impose a sentence for each count to run consecutively. *See*

18 U.S.C. § 3584. Thus, if the defendant pleaded guilty to the four counts, the potential term of incarceration is 36 months. To date, the defendant has served approximately 84 days of incarceration – nowhere near the maximum term of incarceration.

To determine whether terms of imprisonment should run concurrently or consecutively, the Court considers the factors set forth in 18 U.S.C. § 3553(a). *See United States v. Ayers*, 795 F.3d 168, 173 (D.C. Cir. 2015) (holding that the district court has discretion to impose consecutive sentences and directing the district court to consider the § 3553(a) factors when determining whether to impose a concurrent or consecutive sentence). In this case, *if* the Supreme Court issues an adverse ruling to the government's position in *Fischer*, and *if* the adverse ruling impacts the evidence of this specific case, and *if* the defendants were only sentenced on the §§ 1752(a) and §§ 5104 charges, the defendants' conduct nevertheless warrants a significant sentence. The government is prepared to prove that the defendants traveled to Washington, D.C. and entered the U.S. Capitol Building with the intent to corruptly obstruct the Congressional proceeding. That intent, and the defendants' actions in furtherance of that intent – including making it to the Senate Floor of the U.S. Capitol building – constitute highly aggravating circumstances that, when considered under § 3553(a), are far more aggravating than a trespass charge. Given these highly aggravating factors under § 3553(a), the government would likely seek a high sentence for these defendants.

Next, despite the defendant's assertion that he no longer seeks a speedy trial, the public and the government have a right to resolution of the defendants' other charges, regardless of the implications of *Fischer*. And because the evidence on those charges overlaps with the evidence the government would use to prove the 1512 count, this case should proceed to trial on all counts

3

as early as possible.[1] *See United States v. Carnell, et al.*, Case No. 23-139-BAH, ECF No. 75 (D.D.C. January 4, 2024) (denying defendants' motion to continue trial pending the Supreme Court's resolution of *Fischer* in a case involving § 1512(c)(2) and various misdemeanor charges).

Finally, the defendant inappropriately seeks release from pretrial detention based on the Supreme Court's certiorari grant. Here, a magistrate judge in the United States District Court for the Northern District of Ohio ordered both defendants detained following the execution of a bench warrant. *See* Case Nos. 23-mj-5424 (Shawndale); 23-mj-5423 (Donald). The magistrate judge ordered the U.S. Marshal Service to transport the defendants to the District of Columbia. *Id.* at ECF Nos. 3. The defendants now seek review of that order and request release from detention. But any review of such request must be done under the appropriate statutory framework – and not whether the Supreme Court granted certiorari in a particular case.

Title 18 U.S.C. § 3148 provides that sanctions for violation of a release condition include revocation of release, an order of detention, and prosecution for contempt of court. Revocation of release and detention are required if the reviewing judicial officer:

(1) finds that there is . . .

    (A) probable cause to believe that the person has committed a . . . crime while on release; or

    (B) clear and convincing evidence that the person has violated any other condition of release; and

---

[1] The defendants will not suffer any irreparable injury by proceeding with trial. Even if the defendants are convicted of obstruction of an official proceeding and if the Supreme Court were to decide *Fischer* adversely to the government, it is not clear that the Court's interpretation of Section 1512(c)(2) would necessarily invalidate the defendants' convictions. And even if it did, the appropriate venue for challenging such a conviction would be a motion to set aside the verdict or a post-sentencing appeal, depending on the timing. In this respect, the defendants "stand[] in no different position than any other criminal defendant who loses a pretrial motion attacking an indictment on the ground that the underlying criminal statute is unconstitutional. The district court's order in such a case . . . would be fully reviewable on appeal should the defendant be convicted." *United States v. Cisneros*, 169 F.3d 763, 768-69 (D.C. Cir. 1999).

    (2)

        (A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or

        (B) the person is unlikely to abide by any condition or combination of conditions of release.

*See United States v. Vega*, 438 F.3d 610, 615 (10th Cir. 2003) (under 18 U.S.C. § 3145(b), a district judge in the prosecuting district may review an order from a magistrate judge in the district of arrest, on motion by the defendant).

    First, under 18 U.S.C. § 3148(b)(1)(B), the defendant and his co-defendant violated their conditions of release by failing to appear. *See* ECF Nos. 75, 76; Minute Order (9/5/2023); Minute Order (10/5/2023). The defendant also violated his conditions of release when he cut off and removed his ankle bracelet for location monitoring. Minute Order (10/6/2023). Both defendants violated conditions of release by evading communication with the Pretrial Services Agency (PSA). As a result, the Court deemed both defendants to be flight risks and issued bench warrants. Minute Order (9/5/2023). Even after receiving notice of the issuance of bench warrants, the defendants failed to appear or communicate with the Court.

    Second, under 18 U.S.C. 3148(b)(2)(B), the defendant is unlikely to abide by any condition or combination of conditions of release. *See United States v. Stamper*, Case No. 7:23-009-DCR, 2023 WL 8530016, at *2 (E.D. Ken. Dec. 8, 2023) ("[Section] 3142(b)(2)(A) is written in the disjunctive, and the Court may determine that detention is appropriate based solely on the fact that the defendant is unlikely to abide by the conditions of release."). Since September 2023, both defendants have taken concerted and drastic efforts to evade the Court and comply with conditions of release. They have refused to appear for hearings; ignored and/or failed to communicate with

their counsel; failed to communicate with pretrial services; failed to communicate with the Court; failed to communicate with PSA; for Donald, cut off his ankle bracelet; and for Shawndale, fled to the county sheriff's office. The defendants' actions are consistent with the pattern of behavior since the pendency of this case – refusing to acknowledge the jurisdiction or authority of this Court. The defendants had ample opportunity to comply with conditions of release during the 33 days when their bench warrants were active. Nothing would prevent the defendant (or his co-defendant) from making similar decisions today, if placed on conditions of release. *See also* ECF Nos. 75, 76 (PSA recommending removal from supervision due to non-compliance).

Finally, and alternatively, under 18 U.S.C. 3148(b)(2)(A), based on a consideration of the factors set forth in 3142(g), there is no condition or combination of conditions of release that will assure that the defendants will not flee. The factors under section 3142(g) are as follows: (1) "the nature and the circumstances of the offense charged," (2) "the weight of the evidence against the person," (3) "the history and characteristics of the person," and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(l)-(4). These factors weigh in favor of detention.

    A.  *The Nature and Circumstances of the Offenses Weigh in Favor of Detention*

The nature and circumstances of the defendant's January 6 conduct, supporting the charged offenses, weigh heavily in favor of detention.  Like all rioters on January 6, the defendant was a member of a thousand-strong mob that attacked the Capitol and succeeded in halting the operation of the United States Congress.  Notably, that is precisely the outcome that the defendants intended.

The defendants entered and remained on the Capitol grounds and sought to stop, delay, and hinder Congress's certification of the Electoral College vote. The defendants approached the Capitol building from the West side – marching through a continuous and violent melee. To reach

the upper terrace near entrances to the Capitol, the defendants climbed through construction scaffolding to reach an access point to the Capitol building, Shawndale Chilcoat declared that they were going to stop Congress, and the defendants cheered on the destruction of the Capitol building prior to entering. The defendants entered the Capitol building after a nearby rioter violently breached the doors. The defendants approached a police line and, with the strength of the crowd around them, overran the police line. Rioters yelled "WHOSE HOUSE? OUR HOUSE!" as they stormed passed the officers. The defendants proceeded directly to the Senate Floor where members of Congress had emergency evacuated not long before. Although these defendants did not engage in violence, the defendants entered the building and quickly proceeded directly to the Senate Chamber – where not long before, Congress had been convened to fulfill their constitutional obligations.

For those reasons, the nature and circumstances of the charged offenses strongly support a finding that no conditions of release will assure the defendants will not flee. Additionally, a defendant who demonstrates such contempt from the rule of law cannot reasonably assure future court appearances.

        B.      *The Weight of the Evidence Weighs in Favor of Detention*

The weight of the evidence against the defendant and his co-defendant is overwhelming and weighs strongly in favor of detention. The defendant's criminal conduct is captured on many different videos from multiple angles. The defendant can be viewed on surveillance footage from both inside and outside the Capitol, as well as numerous third-party videos. In these videos, her face is fully visible. The defendant memorialized his crimes via photograph and video, and was tagged by Shawndale Chilcoat in many uploaded photos and videos to social media.

        C.      *The Defendant's History and Characteristics Weigh in Favor of Detention*

The defendant's history and characteristics also weigh in favor of detention. When the defendant was arrested, he provided conflicting information regarding his residence to the FBI and PSA. Dozens of firearms were seized from the defendant's home, despite that he is a "prohibited person." Because of the defendant's dangerousness to the community and flight risk, the defendant was ordered to location monitoring and a curfew as conditions of his release.

Since September 2023, the defendant has a history of refusing to comply with the orders of this Court. The defendant has made various forms of "sovereign citizen" arguments since the pendency of the case and has consistently maintained that he is not subject to the jurisdiction or authority of the Court. The defendant doubled down on these views when he violated his release conditions and refused to appear before the Court – on two separate occasions. The defendant was notified that the Court issued bench warrants for the arrests of the defendants, yet he continued to refuse to comply. The defendant eventually cut off his ankle bracelet to avoid detection by PSA.

On October 11, 2023, when the defendants learned of the FBI's apprehension efforts, both defendants called 911. Donald Chilcoat falsely reported that the FBI was shooting at him, and Shawndale Chilcoat requested to speak to the sheriff to prevent her arrest and eventually fled to the Sheriff's Office, where she was eventually arrested by the FBI.

    D.    *Nature and Seriousness of the Danger to the Community*

The defendant has an extensive criminal history, including domestic violence (2018), complicity grand theft auto (2009), abduction (2002), felonious assault (2000), domestic violence (2000), attempted drug trafficking (1994) and sale of cocaine and marijuana (1993). As previously stated, the FBI recovered dozens of firearms from the defendant during the execution of the search warrant, despite that the defendant is a "prohibited person." The defendant's Facebook account details repeated instances of purchasing and selling firearms. The defendant poses a serious danger

to the community if released.

In other words, the mechanism under the Bail Reform Act appropriately provides Congressional guidance on how to assess whether a person can remain on release. None of those factors deal with a question of law based on a grant of *certiorari*. The defendants should not use the threat of a hypothetical change in the law as a method to undermine prior determinations of danger and/or flight risk. Whether the defendants were charged with "just" a misdemeanor, or felony Obstruction, the revocation was and is appropriate. The Court can and should schedule a trial date within the Speedy Trial Act.

## **CONCLUSION**

The defendant's motion for release based on the Supreme Court's grant of certiorari in *Fischer* should be denied, and the defendant should be detained following violations of his release conditions under 18 U.S.C. § 3148(b)(1)(A) and (b)(2)(A) or (b)(2)(B).[2]

Respectfully Submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

*/s/ Ashley Akers*
ASHLEY AKERS
Trial Attorney (Detailed)
MO Bar No. 69601
Ashley.akers@usdoj.gov
(202) 353-0521

---

[2] The same rationale applies to Shawndale Chilcoat's motion for release.