IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO: 1:22-CR-00299 |
| | : | |
| Plaintiff, | : | |
| | : | |
| -vs- | : | |
| | : | |
| SHAWNDALE CHILCOAT and | : | |
| DONALD CHILCOAT, | : | |
| | : | |
| Defendants. | : | |

**DEFENDANTS' RESPONSE TO THE GOVERNMENT'S STATUS REPORT REGARDING THE IMPACT OF *UNITED STATES V. FISCHER*, 144 S. Ct. 2176 (2024) AND MOTION TO DISMISS COUNT ONE**

**A. Procedural History**

On April 3, 2024, a grand jury returned a superseding indictment charging the defendants with a violation of 18 U.S.C. §1512(c)(2) and 2 (Count One), among other offenses. (Doc. 109). Acting *pro se*, Donald Chilcoat filed a motion to dismiss Count One. (Doc. 114). Shawndale Chilcoat moved to join that motion. (Doc. 119). The Government filed a response to that motion. (Doc. 124). During the pendency of those motions, the Supreme Court decided *Fischer v. United States*, 144 S.Ct. 2176 (2024). On August 7, 2024, by minute order, the Court ordered the parties to file a status report describing the impact of *Fischer* on Count One. The Government responded to that minute on August 21, 2024. (Doc. 159). This Court appointed counsel to represent Donald and Shawndale Chilcoat on October 30, 2024. (Doc. 220-221). Due to the ethical complications of representing criminal co-defendants, counsel sought more time to file this pleading. (Doc. 224).

### B. The Superseding Indictment (Doc. 109) Is Legally Insufficient

It is well established that an indictment must contain all the essential elements of the offenses charged. *Hamling v. United States*, 418 U.S. 87, 118 (1974); *Russell v. United States*, 369 U.S. 749, 763-64 (1962); *Hagnar v. United States*, 285 U.S. 427 (1932); *United States v. Warnagiris*, 699 F. Supp.3d 31 (D.D.C. 2023). When an indictment fails to include all the essential elements of the crime charged, it is insufficient as a matter of law. *Warnagiris*, 699 F. Supp. 3d at 39; *see also United States v. Ballestas*, 795 F.3d 138, 148-49 (D.C. Cir. 2015) ("[a]n 'indictment's main purpose is to inform the defendant of the nature of the accusation against him.'" (quoting *United States v. Hitt*, 249 F.3d 1010, 1016 (D.C.Cir. 2001)).

The Government suggests that the indictment is sufficient to proceed after the United States Supreme Court ruling in *Fischer* because the indictment "mirrors the statutory language defining the offense." (Doc. 159 at 4). But it does not. The indictment alleges that Donald and Shawndale Chilcoat, "attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, specifically Congress's certification of the Electoral College vote. . ." (Doc. 109). In the same document, the Government suggests they must prove that "the defendant committed or attempted to commit an act that impaired the integrity of or rendered unavailable records, documents, or other things to be used in an official proceeding" and "the defendant intended to impair the integrity of or render unavailable such records, documents, objects, or other things to be used in an official proceeding." (Doc. 159 at 2). Noticeably lacking in the superseding indictment is any allegation of the impairment of a document, record, object, or other "thing to be used in an official proceeding." And, after *Fischer* this is an element of the crime. *Fischer v. United States*, 603 U.S. 480, 490 (2024). ("Guided by the basic logic that Congress would not go to the trouble of spelling out the list in

(c)(1) if a neighboring term swallowed it up, the most sensible inference is that the scope of (c)(2) is defined by reference to (c)(1)"). What is more, the Supreme Court explicitly rejected the theory of the indictment here, because it is the same theory of liability the Government argued in the United States Supreme Court in *Fischer*. *Id*. ("If, as the Government asserts, (c)(2) covers 'all forms of obstructive conduct *beyond* Section 1512(c)(1)'s focus on evidence of impairment,' there would have been scant reason for Congress to provide any specific examples at all. The sweep of subsection (c)(2) would consume (c)(1), leaving the narrow provision with no work to do." (citation omitted)).

Knowing this, the Government's position is perplexing. Especially because they have sought superseding indictments in other cases to fix this issue. *See United States v. Kelley*, 1:22-CR-408 (D.D.C. Oct. 17, 2024) (Doc. 69 at 3-4) ("In late September 2024, with the benefit of the Supreme Court's decision in *Fischer* authoritatively interpreting the scope of § 1512(c) a grand jury returned a Superseding Indictment."); Gov. Opp. To Mot. To Dismiss at 4, *United States v. Baez*, 1:21-CR-507 (D.D.C. 2024) (Doc. 106) ("The additional charging language serves to expand the indictment to include both subsections of 1512(c) based on the Supreme Court's guidance that subsection (c)(2) should be read 'in light of the context of subsection (c)(1).'" (citation omitted)).  The Government concedes *Fischer* requires them to prove "the defendant impaired the availability or integrity for use in an official proceeding of records, documents, objects, or . . . other things used in the proceeding or attempted to do so." *Fischer*, 603 U.S. at 497. And an indictment must "contain[] the elements of the offense charged and fairly inform[] a defendant of the charges against which he must defend." *Hamling* 418 U.S. at 117. Because this indictment does not contain the elements that the Government now recognizes are essential, the indictment is insufficient as a matter of law.

## C. Amending the Indictment Will Not Cure the Defect

The Government cannot allege that the Chilcoats committed an "act that impaired the integrity of or rendered unavailable records, documents, or other things to be used in an official proceeding" or that they had the "intent to impair the integrity of or render unavailable such records, documents, objects, or other things to be used in an official proceeding" because there is no evidence of that. Many of the facts of this case will not be in dispute. Since January 6, 2021, there are over a thousand prosecutions in cases stemming from the events at the capitol that day. Many cases have moved through the court system, and most of the evidence is public record. Congress conducted hearings and made findings. Public information about the facts surrounding the events of January 6 has exploded. The defense contends it will be undisputed that "soon after House and Senate recessed into their separate chambers to consider the objection, USCP and Secret Service officers became aware of a security breach outside the West Front of the Capitol Building near Peace Circle" and that the "security breach eventually led the Secret Service to move Vice President Pence out of the Senate Chamber and into a more secure location within the Capitol." *United States v. Kelley,* 1:22-CR-408 (D.D.C. Nov. 7, 2024) (Doc. 84 at 5) Importantly, "soon after Vice President Pence was moved to a secure location, the Senate went into recess." And the defense contends it will be undisputed that "after staff evacuated the certificates from the Senate Chamber, the certificates remained secure; no rioters ever directly encountered them or had access to them." *Kelley*, 1:22-CR-408 at 6.

Presumably the parties will agree that "no rioters ever directly encountered [the certificates] or had access to them." *Id.* This is paramount because in *Fischer*, the Supreme Court held that the scope of Section 1512(c)(2)'s prohibition on corruptly "otherwise obstruct[ing], influenc[ing] or imped[ing] any official proceeding, or attempt to do so" is "limited by" and

4

"defined by reference to" the "preceding list of criminal violations in (c)(1) which proscribes "alter[ing], destroy[ing], mutilat[ing] or conceal[ing] a record, document, or other object . . ." *United States v. DeCarlo,* No. 21-CR-073, 2024 U.S. Dist. LEXIS 198789 at *31 (D.D.C. Nov. 1, 2024). Thus, the Government must prove that a defendant "alter[ed], destroy[ed], multilat[ed] or conceal[d]" or attempted to do the same.

The Government's theory of liability under 18 U.S.C. 1512(c)(2) is simply that based on two alleged statements in Facebook posts and alleged entry into the Capitol, "the jury certainly will be able to infer that Shawndale Chilcoat attempted to impair the availability of the electoral college votes which Congress was to consider." (Doc. 159 at 6). The Government's wording here is crucial, the Government admits there is no direct evidence of impairment of electoral college votes, but that the jury will be required to "*infer* Shawndale Chilcoat attempted" to do so. This requires the jury to infer that based solely on the alleged comment "we were trying to stop them from certifying the votes and didn't know they were already gone." (Doc. 159 at 6). that Shawndale Chilcoat meant she (1) knew records related to the election were in the Senate chamber, how to (2) locate those records related to the election with the intent and ability to (3) alter, destroy, mutilate, or conceal those records. And that she (4) believed these were the only records in existence of the Electoral College ballots, and she (5) believed doing so would somehow obstruct or impede the count of electoral college votes.

The reasonable-doubt standard does not permit inference-stacking. "[T]he ultimate burden on the government is the ability to draw a reasonable inference, and not a speculation, of guilt." *United States v. Villegas*, 911 F.2d 623, 628 (11th Cir. 1990). "Each step in the inferential chain must be supported by evidence that allows the jury to 'draw reasonable inferences from basic facts to ultimate facts." *United States v. Jones*, 713 F.3d 336, 340 (7th Cir. 2013) (quoting

*Coleman v. Johnson*, 566 U.S. 650, 655 (2012). Further "a verdict may not rest on mere suspicion, speculation, or conjecture, or on an overly attenuated piling of inference on inference." *United States v. Moreland*, 665 F.3d 137, 149 (5th Cir. 2011). A judge may not "stack inference upon inference in order to uphold the jury's verdict." *United States v. Valerio*, 48 F.3d 58, 64 (1st Cir. 1995). Put another way, "while an inference may be made from direct evidence that has been proven beyond a reasonable doubt, it is not permissible to make an inference from circumstantial evidence, or inference upon inference." *State v. Cornett*, No. 13–09–13, 2009 WL 2159672, at *4 (Ohio Ct. App. July 20, 2009) (citing *State v. Cowans*, 717 N.E.2d 298, 309–10 (Ohio 1999)).

Additionally, the record evidence regarding Donald Chilcoat is threadbare. There is no evidence a jury can even infer that his alleged presence in the Senate chamber was with the corrupt intent to "obstruct influence or impede" the counting of electoral votes. Nor is there any evidence he "alter[ed], destroy[ed], mutilat[ed] or conceal[ed] a record, document, or other object . . ." The total of the evidence as it relates to the 1512 charge is his alleged presence in the Senate Chamber. That would require the jury to make a similar lengthy chain of impermissible inferences on inferences; that Donald (1) knew records related to the election were in the Senate chamber, how to (2) locate those records related to the election, that he had the ability to (3) alter, destroy, mutilate, or conceal those records, and he (4) believed these were the only records in existence of the Electoral College ballots, and finally that he (5) believed doing so would somehow obstruct or impede the count of electoral college votes. It would be improper for a fact finder to make that string of inferences based on the scant evidence.

Another reason the Government's evidence will be insufficient, the alleged evidence suggests a more likely reading of the defendants' alleged actions is that they were aimed at

6

"'prevent[ing] the immediate ability of Congress to use the ballots in the official proceeding as intended" "by stopping the official proceeding itself' and "forcing the evacuation of the Senate Chamber 'not by impair[ing] the [certificates'] integrity or availability for use in an official proceeding.'" *United States v. Kelley,* No. 1:22-CR-408 (D.D.C 2024) (Doc. 84 at 26) (citing *United States v. DeCarlo,* No. 21-CR-073, 2024 WL 4650993 at *12 (D.D.C. Nov. 1, 2024)). This is also confirmed by the current theory in the indictment, that the Chilcoats "attempted to, and did, corruptly obstruct, influence, and impede an official proceeding. . ." (Doc. 109 at 1). This is conduct that the United States Supreme Court expressly ruled is outside the scope of § 1512.

And the Government's theory fails for another reason. Presumably it will be undisputed that the "relevant 'official proceeding' was already in recess at the time that the certificates of vote were removed from the chamber." *Kelley*, No. 1:22-CR-408 at 26; *see also* Doc. 1, Page 1 ("at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence were instructed to – and did – evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m.") And it is public record that there was not "any delay in resuming the proceeding that was attributable to the need to retrieve the certificates from a secure location." *Id.* Because the certification proceeding "was not in progress" it follows that "temporary removal of the [certificates] . . . did not immediately impact their availability to be used" in the certification process. *Id* (citing *United States v. DeCarlo*, No. 21-cr-073 WL 2024 4650993, at *12 (D.D.C. Nov.1 2024)).

D. **The Government's Proposed Jury Instruction**

The defense largely agrees with the Government's proposed jury instructions that focus on "an act that impaired the integrity of or rendered unavailable. . ." coupled with specific intent "to impair the integrity of or render unavailable such records. . ." (Doc. 15 at 2). Absent from the Government's instruction is a definition of the third element, the mens rea of "corruptly." Given that the Government's Status Report does not propose a definition of "corruptly" and the proposed due date for jury instructions is March 24, 2025, the defense proposes litigating the issue at a later date. (Doc. 234-1 at 2).

Respectfully submitted,

STEPHEN C. NEWMAN
Federal Public Defender
Ohio Bar:  0051928

*/s/Edward G. Bryan*
EDWARD G. BRYAN
Assistant Federal Public Defender
Ohio Bar: 0055556

*/s/Matthew Gay*
MATTHEW GAY
Assistant Federal Public Defender
NY Bar No: 5237409
1660 West Second Street, Suite #750
Cleveland, OH 44113
(216) 522-4856 Fax: (216)522-4321
E-mail: Edward_Bryan@fd.org
              Matthew_Gay@fd.org